UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 17-12191

---

RYAN N. SCEVIOUR,

    Plaintiff,

  v.

COLONEL RICHARD M. MCKEON,
MAJOR SUSAN ANDERSON,
AND A NUMBER OF JOHN DOES
AND/ OR JANE DOES,

    Defendants.

---

### DEFENDANT, MAJOR SUSAN ANDERSON'S, MEMORANDUM IN SUPPORT OF HER MOTION FOR JUDGMENT ON THE PLEADINGS

#### INTRODUCTION

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendant Susan Anderson ("Defendant Anderson") submits this memorandum in support of her Motion for Judgment on the Pleadings in the above-captioned Amended Complaint. In this case, the Plaintiff, Ryan Sceviour ("Plaintiff"), alleges that Defendant Anderson, a Major with the Massachusetts State Police ("MSP"), conspired with Defendant MSP Colonel McKeon ("Defendant McKeon") and others to violate the Plaintiff's property interest in his employment. Among his claims, Plaintiff alleges violations of his constitutional rights pursuant to 42 U.S.C. § 1983 (Count I) and M.G.L. c. 12, § 11H (Count II). Plaintiff also alleges both a federal and state civil conspiracy claim (Count III) as well as a state law claim of intentional infliction of emotional distress (Count IV). Defendant Anderson now respectfully moves this Court, pursuant to Fed. R. Civ. P. 12(c), to dismiss all claims against her on the grounds that Plaintiff fails to state a claim upon which relief can be granted.

BACKGROUND

Solely for the purpose of the instant motion, the Defendant, as it must, accepts as true the allegations as set forth in the Plaintiff's Complaint.

Trooper Sceviour is a Massachusetts State Trooper employed by the Massachusetts State Police. Am. Compl. ¶ 4. Colonel McKeon and Major Anderson are, respectively, the Superintendent and a Major with the Massachusetts State Police. Am. Compl. ¶¶ 5-6.

On Monday, October 16, 2017, Trooper Sceviour responded to a call regarding an automobile crash on Interstate 190 South. Am. Compl. ¶¶ 16-17. He found a female driver and male passenger at the scene of the accident. Am. Compl. ¶ 19. Trooper Sceviour arrested the driver after she failed field sobriety tests. The driver was identified as Alli Bibaud, who made statements indicating she was using heroin. Am. Compl. ¶¶ 20-23. The driver subsequently failed two breathalyzer tests. Am. Compl. ¶ 28. Plaintiff also found drug paraphernalia during a search of the vehicle. Am. Compl. ¶ 24.

As Plaintiff transported the driver to the police barracks, she apparently told Plaintiff that her father was a judge. Am. Compl. ¶¶ 26-27. During the breathalyzer tests, the driver made other statements to Trooper Sceviour. Am. Compl. ¶ 29. Trooper Sceviour included these statements in his police report, which he prepared during the morning of October 17, 2017. The Plaintiff's arrest report was approved by his supervisor Sergeant Jason Conant ("Sergeant Conant"). Am. Compl. ¶¶ 36, 38-39. Trooper Sceviour also called Trooper Ali Rei ("Trooper Rei"), a Drug Recognition Expert, to the scene of the crash. Am. Compl. ¶ 24. The driver was ultimately charged with Operating Under the Influence of Narcotics, Operating Under the Influence of Liquor, Negligent Operation of a Motor Vehicle, Marked Lanes Violation, and Failure to Inspect. Am. Compl. ¶ 34. Ms. Bibaud was not charged with solicitation or any other

related offense.

Ms. Bibaud was scheduled to be arraigned that same morning (October 17, 2017). Upon receiving a copy of the Plaintiff's police report, Ms. Bibuad's defense attorney filed a handwritten motion asking the Court to impound Trooper Sceviour's arrest report on the grounds of "prejudicial pre-trial publicity." Am. Compl. ¶ 86. After a brief hearing, the Court allowed the Motion to Impound the Plaintiff's arrest report. The Motion to Impound cited Uniform Rules on Impoundment Procedure ("URIP") Rule 8 which provides the procedures governing the issuance of an order of impoundment.[1] URIP also requires formal notice to be provided to the Massachusetts State Police that the report has been impounded by the Court.[2]

On October 19, 2017, Trooper Sceviour was summoned to the police barracks, where he met with his supervisor Lieutenant James Fogarty ("Lieutenant Fogarty"), Sergeant Conant, and a union representative. Am. Compl. ¶¶ 45-48, 51-53. At the meeting, Lieutenant Fogarty stated that Major Anderson, had been ordered by her supervisors to issue a negative Supervisory Observation Report to Trooper Sceviour and Sergeant Conan. Am. Compl. ¶ 54. The written Observation Report stated that it was being issued to the Plaintiff for "the negative and derogatory statements including within the gist of [his] report. These statements were not

---

[1] It is "[t]hrough the balancing process that a judge makes the determination of 'good cause.'" *H.S. Gere & Sons, Inc. v. Frey*, 400 Mass. 326, 329 (1987). To determine whether good cause is shown, a judge must balance the rights of the parties based on the particular facts of each case, and take into account all relevant factors, including, but not limited to, the nature of the parties and the controversy, the type of information and the privacy interests involved, the extent of community interest, and the reason for the request. *New England Internet Café, LLC v. Clerk of the Superior Court for Criminal Business in Suffolk County*, 462 Mass.76, 83 (2012); *Boston Herald, Inc. v. Sharpe*, 432 Mass. 593, 604-605 & 604 n.22 (2000) A party's constitutional rights, investigative secrecy, and the safety of a person or the public are also concerns. See, e.g., *New England Internet Café, LLC v. Clerk of the Superior Court for Criminal Business in Suffolk County*, 462 Mass. 76, 86, 92, 93 (2012); *Commonwealth v. Silva*, 448 Mass. 701, 708 (2007). A legitimate expectation of privacy ordinarily is sufficient to constitute good cause. *H.S. Gere & Sons, Inc. v. Frey*, 400 Mass. 326, 330 (1987).

2 The Supreme Judicial Court has observed that: Judges enjoy . . . flexibility in crafting remedies appropriate to the parties' particular interests and needs. Among other options, a judge may release the materials to the public, or only to the moving party with or without a confidentiality order, or release the materials to either with redactions appropriate to protect the legitimate interests of the parties in investigative secrecy, privacy, property, or fair trial. *New England Internet Café, LLC v. Clerk of the Superior Court for Criminal Business in Suffolk County*, 462 Mass. 76, 85-86 (2012) (citations and footnote omitted).

elements of the crime nor did they contribute to probable cause. Inappropriate commentary should not be included in future reports." Am. Compl. ¶ 55;

Trooper Sceviour and his union representative then met with Major Anderson. Am. Compl. ¶ 61. During this meeting, she instructed Trooper Sceviour to redact the three sentences in his report and, according to the Plaintiff indicated that the order came from Colonel McKeon and Secretary of Public Safety Daniel Bennet ("Secretary Bennet")[3]. Am. Compl. ¶¶ 63-73. After Trooper Sceviour requested that he be allowed to indicate that the revisions had been made due to an order by his supervisors, Major Anderson ultimately permitted him to indicate that the report was "Revised on October 19, 2017."[4] Am. Compl. ¶¶ 75-79. Major Anderson also stated that she had been ordered to remove Trooper Rei's notes from the Administrative Log, and she did so. Am. Compl. ¶¶ 80-81. Trooper Sceviour, at Major Anderson's request, delivered the amended report to the ADA assigned to the case. Am. Compl. ¶¶ 82-84.

The next day, the ADA made an oral motion to redact the inappropriate statements from the original, impounded police report. Am. Compl. ¶¶ 87-88. The Court granted the motion. Am. Compl. ¶ 88.

ARGUMENT

A. <u>Standard of Review for Motion for Judgment on the Pleadings</u>

A motion for judgment on the pleadings, made pursuant to <u>Fed.R.Civ.P.12(c)</u>, tests the legal sufficiency of the complaint. See *Furtick v. Medford Housing Authority*, 963 F. Supp. 64, 67 (D. Mass.1997).

In ruling on a motion for judgment on the pleadings, the court must accept all well-

---

[3] In her answer to Plaintiff's Amended Complaint, Defendant Anderson has expressly denied any knowledge regarding the involvement of either Secretary of Public Safety Daniel Bennet ("Secretary Bennet") or District Attorney Joseph Early ("DA Early").
[4] Major Anderson has produced documentation through her Initial Disclosures demonstrating that she, in fact, was the one ordered Trooper Sceviour to mark his redacted report as "Revised" during their conversation.

pleaded facts as alleged in the complaint as true and view them in the light most favorable to the plaintiff. See *Santiago de Castro v. Morales Medina*, 943 F.2d 129, 130 (1st Cir. 1991); *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988).

The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule (12)(b)(6) motion. *Massachusetts Candy & Tobacco Distributors, Inc. v. Golden Distributors, Ltd.*, 852 F. Supp. 63, 67 (D. Mass. 1994).

The court is not bound to accept as true conclusions of law or unwarranted deductions of fact. See *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir. 1993). Where it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of her claims, dismissal is proper. See *Ballou v. General Electric Co.*, 393 F.2d 398 (1st Cir. 1968). The pleading rules are "not entirely toothless," *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 23 (1st Cir. 1990) and the "minimal requirements are not tantamount to nonexistent requirements." *Gilbert v. Cambridge*, 932 F.2d 51, 62 (1st Cir. 1991). A plaintiff must set forth " 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.' " *Roth v. United States*, 952 F.2d 611, 613 (1st Cir. 1991) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)). The plaintiff cannot rely upon "subjective characterizations or unsubstantiated conclusions." *Fleming*, 922 F.2d at 23. "Empirically unverifiable conclusions, not logically compelled, or at least supported by the stated facts," deserve no deference. *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992); *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989).

The deference due the allegations of a complaint does not extend to "self-serving

generalities" or "unsubstantiated conclusions." *Gilbert*, 932 F.2d at 62.3 "[O]nly when conclusions are supported by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, [do] 'conclusions' become 'facts' for pleading purposes." Id. Finally, to plead a justifiable case, a plaintiff must allege a " 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.' " *AVX Corp.*, 962 F.2d at 113 (quoin *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

**1) The Complaint Fails to State a Claim for Liability Under 42 U.S.C. § 1983 (Count I).**

A claim under § 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law and second, the conduct must have worked a denial of rights secured by the Constitution or by federal law. *Soto v. Flores*, 103 F.3d 1056. 1061 (1st Cir. 1997) cert denied, 522 U.S. 819 (1997) citing *Martinez v. Colon*, 54 F.3d 980, 984 cert. denied, 516 U.S 987 (1995). Under the second element, a plaintiff is required to prove not only a deprivation of a right, but also that the defendant's conduct was a cause in fact of the alleged deprivation. Id. at 1062 citing *Maldonado Santiago v. Velazquez Garcia*, 821 F.2d 822, 831 (1st Cir. 1987).

 a) <u>Plaintiff Has Failed to Allege a Deprivation of a Property Interest</u>

Plaintiff alleges a violation of his Fourteenth Amendment rights, specifically his substantive due process rights, yet has asserted no facts to establish an actual deprivation of his constitutional right. First, the Amended Complaint contains nothing more than conclusory allegations that Plaintiff's constitutional rights were implicated by the observation report Trooper Sceviour received. Trooper Sceviour contends Defendants violated his property right in his employment, including his "right to his employment free from interference aimed at achieving unlawful and

unethical ends, threats of suspension without pay, intimidation, and coercion into aiding in unlawful and unethical acts, and without discipline for following the rule of law and opposing the defendants' attempts to violate it." Am. Compl. ¶¶ 102, 107.

The Fourteenth Amendment requires that a state must comply with due process before discharging a public employee who has a property interest in continued employment. See *Santana v. Calderon*, 342 F.3d 18, 23 (1st Cir. 2003). However, whether a public employee has such a property interest is a question of state law. Id. Plaintiff has not alleged with particularity any state law which grants him a property interest in employment free from interference, or free from threats of suspension or discipline.

Trooper Sceviour does not allege that his employment was terminated or that he lost any amount of pay. Employment actions short of termination or without a loss of salary, or the mere threat of such action, do not implicate an employees' property interests. See *Phillips v. City of Metheun*, 818 F. Supp. 2d 325, 332 (D. Mass. 2011) (no property interest in supervisory duties without change in salary).

b) <u>The Substantive Due Process Claim Fails to Allege Conscience-Shocking Conduct</u>

It is well settled that substantive due process claims are not favored. "Substantive due process, as a theory for constitutional redress, has in the past fifty years been disfavored, in part because of its virtually standardless reach." *Colón Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 41-42 (1st Cir. 1992). Accord, *Licari v. Ferruzzi*, 22 F.3d 344, 350 (1st Cir. 1994).

To state a substantive due process claim challenging executive action, a plaintiff must plausibly allege "both that the acts were so egregious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property." *Pagán v. Calderon*, 448 F.3d

16, 32 (1st Cir. 2006) (emphasis in original). As discussed supra, the Plaintiff's complaint fails to allege that the Defendants deprived Sceviour of a protected property interest. But even if this Court concludes otherwise, the substantive due process claims must be dismissed because Trooper Sceviour fails to-nor could he allege the level of conscience-shocking behavior by Defendant Anderson required to establish a claim for violation of substantive due process.

The First Circuit has made clear that "the requisite arbitrariness and caprice for a conscience-shocking executive action must be stunning, evidencing more than humdrum legal error." *DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005) (quotation marks omitted). Thus, "negligent conduct, simpliciter, is categorically insufficient to shock the conscience." Id. And "[m]ere violations of state law, even violations resulting from bad faith, do not necessarily amount to unconstitutional deprivations of substantive due process." Id. Substantive due process claims, the First Circuit recently reiterated, are reserved only "for truly horrendous situations." *Freeman v. Town of Hudson*, 714 F.3d 29, 40 (1st Cir. 2013).

In *Dobelle v. Flynn*, 12 F. Supp. 3d 274, 290 (D. Mass. 2014), this Court recently dismissed Plaintiff's claim for violation of substantive due process on a 12(b)(6) motion and held the following;

> Although Plaintiff's allegations, if true, are serious, the court cannot conclude that they plausibly present the kind of egregious situation upon which a substantive due process claim may rest. See *Harron v. Town of Franklin,* 660 F.3d 531, 536 (1st Cir.2011) ("[T]he test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.") (quoting *Gonzalez–Fuentes v. Molina,* 607 F.3d 864, 881 (1st Cir.2010)). *Dobelle v. Flynn*, 12 F. Supp. 3d 274, 290 (D. Mass. 2014)

The Defendants' alleged conduct, as portrayed in Plaintiff's complaint, is far from the type of "truly horrendous" conduct "inspired by malice or sadism" necessary to state a substantive due

process claim. The actions of the Massachusetts State Police ("MSP") and the individual capacity Defendants are not conscious shocking and respond to the legitimate internal guidelines and policies developed within the MSP's prerogative.

Plaintiff has not alleged any egregious, outrageous, or conscience-shocking actions by Major Anderson. Here, a court determined the Plaintiff's arrest report contained potentially prejudicial statements that should be impounded. This action was done in open court, shortly after the arrest report had been filed and based upon the filing of an appropriate motion by the Ms. Bibuad's attorney. Major Anderson was subsequently provided with the Motion to Impound and then received an order that the police report be revised to reflect the court's determination. The court, upon motion of the prosecutor, subsequently confirmed that the statements at issue should not appear in the public record, and ordered that they be redacted from the original police report. There is nothing outrageous or shocking nor is there anything "truly horrendous" about Major Anderson's actions, which were done in compliance with and to implement the court's impoundment order.

Thus, the Plaintiffs' Fourteenth Amendment claim based on a theory of substantive due process violation should be dismissed with prejudice. See also e.g., *Connick v. Myers*, 461 U.S. 138, 143 (1983) ("[G]overnment offices could not function if every [decision] became a constitutional matter**")** (emphasis provided); see also *Johnson v. U.P.R.*, 714 F.3d 48, 54 (1st Cir. 2013) ("Courts may not sit as super-personnel departments, assessing the merits - or even the rationality - of employers' nondiscriminatory business decisions.").

**2) Count II Also Fails to State a Claim Against Major Anderson Because Plaintiff Does Not Allege Actionable Threats, Intimidation or Coercion By Major Anderson**

In order to state a claim against Major Anderson under the Massachusetts Civil Rights Act (the "MCRA"), Plaintiff must allege that he (1) interfered or attempted to interfere with

Plaintiff's "exercise or enjoyment . . . of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth" (2) "by threats, intimidation or coercion." Mass. Gen. Laws ch. 12, § 11H. The MCRA is narrower than § 1983 because "even a direct deprivation of a plaintiff's rights would not be actionable under the act unless it were accomplished" by threats, intimidation, or coercion. *Nolan v. CN8*, 656 F.3d 71, 76-77 (1st Cir. 2011) (internal quotation marks omitted).

Plaintiff's allegations in support of his MCRA claim are identical to his § 1983 claim and, like that claim, must fail. As with Plaintiff's § 1983 claims, he has not alleged any specific right that was deprived of by Colonel McKeon, let alone by Major Anderson. Plaintiff fails to state a claim under the MCRA for an additional reason: he does not allege any threats, intimidation, or coercion by Major Anderson. The words "threats, intimidation or coercion" are given their normal connotation, i.e., that of "forcing submission by conduct calculated to frighten, harass or humiliate." *Smith v. Town of Longmeadow*, 29 Mass. App. Ct. 599, 603 (1990). "There must be something akin to duress which causes the victim to relinquish [his] rights." *Butler v. RMS Techs. Inc.*, 741 F. Supp. 1008, 1011 (D. Mass. 1990) (citing *Layne v. Superintendent, Massachusetts Correctional Inst.*, 406 Mass. 156 (1989)).

The allegations against Major Anderson fall far short of this standard. The sole "threat" Trooper Sceviour alleges was actually a statement made by his union representative, Trooper Gilbert, who informed Trooper Sceviour that the consequences of not following an order would include a charge of insubordination and possible discharge. Am. Compl. ¶¶ 52, 71. And even this alleged "threat" does not rise to the level of actionable conduct under the MCRA. At most, Major Anderson passed along the order that an Observation Report be issued against Trooper Sceviour, and that he be required to redact the potentially prejudicial comments that the Plaintiff had

previously included in his initial report.

**3) Major Anderson is Entitled to Qualified Immunity**

The doctrine of qualified immunity protects government officials from personal liability for civil damage under 42 U.S.C. § 1983 and G.L. c. 12, § 11H, as long as their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jarrett v. Town of Yarmouth*, 309 F.3d 54, 61 (1st Cir. 2002)(citations omitted); *Guierrez v. Massachusetts Bay Transportation Authority*, 437 Mass. 396, 403 (2002)(qualified immunity principles as developed under federal law protect public officials charged with violations of the Massachusetts Civil Rights Act)(citations omitted). The qualified immunity defense is favored early in the proceedings so that costs and expenses of trial can be avoided where the defense is dispositive. See *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

The question of whether a defendant is entitled to qualified immunity focuses on the "objectively reasonable beliefs and actions of the defendants as to the constitutionality of their actions, even if the beliefs are mistaken." *Diaz-Bigio v. Santini*, 652 F.3d 45, 46 (2011) citing *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011).

The First Circuit employs a two-prong analysis to determine whether a defendant is entitled to qualified immunity. Id. The court first determines whether the plaintiff has alleged facts sufficient to make out a violation of a constitutional right, and if she does, it considers whether the right was clearly established at the time of the alleged violation. Id. The court next examines "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official." Id. citing *Decotiis v. Whittemore*, 635 F.3d 22, 36 (2011). The question at issue is "whether the state of the

law at the time gave defendant "clear notice that what he was doing was unconstitutional." For immunity not to issue, the unlawfulness of the defendant's act must be apparent at the time of the alleged violation "in the light of pre-existing law." Id. However, even if the 'right' invoked by the plaintiff is clearly established, immunity exists if a reasonable official could have believed, based on the particular facts, that no violation existed. Id.

Qualified immunity is appropriate unless "<u>every</u> reasonable official would have understood that what [defendant] is doing violates" plaintiff's constitutional rights." *Diaz-Bigio v. Santini*, 652 F.3d 45, 50-51 (1st Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis in original). Conversely, if reasonably competent officers can disagree on whether the action was unlawful, a grant of immunity is appropriate.

Here, multiple officials did in fact confirm that removing the potentially prejudicial statements from the report was appropriate. Although Trooper Sceviour contends that multiple police officials saw nothing wrong with his report, it is apparent from the face of the Amended Complaint that the driver's defense attorney, the prosecutor, and the court all agreed the statements, at a minimum were potentially prejudicial and should be removed. See *Cox v. Hainey*, 391 F.3d 25, 32 (1st Cir. 2004) (finding qualified immunity appropriate when police officer consulted with prosecutor who determined that actions were reasonable).

Since Plaintiff has not set forth facts sufficient to raise a viable claim that Defendant Anderson violated his Fourteenth Amendment due process rights Defendant Anderson is entitled to qualified immunity. See *Broderick v. Evans*, 2007 WL 967861 (D.Mass. 2007) (if the plaintiff has not alleged a violation of a constitutional right, "there is no necessity for further inquires concerning qualified immunity"). Moreover, no reasonable official could have believed, based on the particular facts alleged by Plaintiff, that Defendant Anderson's orders which were,

according to Plaintiff's complaint, allegedly handed down from the Executive Office of Public Safety and Security and the Colonel of the MSP, in violation of the Plaintiff's constitutional rights. Defendant Anderson is entitled to qualified immunity.

**4) Plaintiff's Complaint Fails to State a Claim for a Federal or State Conspiracy**

A conspiracy for violations of civil rights under § 1983 entails "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damages.' " *Earle v. Benoit*, 850 F.2d 836, 844 ( 1st Cir. 1988). To allege a conspiracy conclusory allegations are not enough, the plaintiff must state "with specificity the fact that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy." *Santana v. Calderon*, 188 F. Supp. 2d 160, 178 (D.P.R. 2002).

In order to state a conspiracy claim the plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants to plot, plan or conspire to carry out the alleged chain of events in order to deprive the plaintiff of a federally protected right. *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 533 (10th Cir. 1998), citing *Hunt v. Bennett*, 17 F.3d at 1266 ("Conclusory allegations of conspiracy are insufficient to state a valid section 1983 claim"). To establish a cause of action based on conspiracy, a plaintiff must allege and show that the defendant agreed to commit an illegal act with another person. *Schneider v. Colegio de Abogados de Puerto Rico*, 546 F. Supp. 1251, 1263 (Dist. Of PR 1982). A plaintiff pursuing a cause of action alleging conspiracy, must document with some degree of particularity, defendants' agreement to commit an illegal act; these allegations must at least allow the Court to infer that defendants' plotted against plaintiff by reaching an understanding to bring about the conspiracy's objectives. Id at 161.

In this case, Plaintiff alleges a general claim of conspiracy however, Plaintiff has failed to document with some degree of particularity any agreement among appearing defendants to commit an illegal act. Vague, conclusory or general allegations of a conspiracy are insufficient to withstand a motion to dismiss for failure to state a claim. *Sommer v. Dixon*, 709 F.2d 173, 175 (2nd Cir.), cert denied, 484 U.S. 857 (1983). In view that plaintiff has failed to establish a conspiracy claim, the conspiracy claim should be dismissed.

**5) Plaintiff fails to state a claim for Intentional infliction of emotional distress**

To state a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the defendants "intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct[,]" (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community[,]" (3) that the defendants' actions caused the plaintiff distress, and (4) that the plaintiff's emotional distress was severe. *Howell v. Enter. Publ'g Co., LLC*, 455 Mass. 641, 672 (2010) (citations omitted). "To be considered extreme and outrageous, the defendant's conduct must be beyond all bounds of decency and . . . utterly intolerable in a civilized community. Liability cannot be founded upon mere insults, threats, or annoyances." *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 596 (2001) (quoting *Cady v. Marcella*, 49 Mass. App. Ct. 334, 340-341 (2000) (internal citation and quotation omitted), review denied, 432 Mass. 1107, 737 N.E.2d 467 (2000)). Simply put, Plaintiff has not alleged any such conduct against Defendant Anderson. The conduct of which Plaintiff complains (against Defendant Anderson) is discussed above, and, therefore, need not be repeated herein. Suffice to say, however, "ordering" Plaintiff to remove statements regarding irrelevant, salacious and

prejudicial information from his report in compliance with the protocols of the MSP, without more, does not constitute conduct that is "utterly intolerable" by any objective measure.

## CONCLUSION

For the reasons stated above, Defendant Anderson respectfully requests that this Honorable Court dismiss all claims alleged against her in Plaintiff's Complaint.

         Respectfully submitted,
         For the Defendant, Major Susan Anderson
         By Her Attorney,

         /s/ Timothy M. Burke
         Timothy M. Burke, BBO #065720
         LAW OFFICES OF TIMOTHY M. BURKE
         160 Gould Street, Suite 100
         Needham, MA  02494
         (781) 455-0707

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on March 2, 2018.

         /s/ Timothy M. Burke