UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 17-12191

RYAN N. SCEVIOUR,

    Plaintiff,

  v.

COLONEL RICHARD M. MCKEON,
MAJOR SUSAN ANDERSON,
AND A NUMBER OF JOHN DOES
AND/OR JANE DOES,

    Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANDERSON'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

The plaintiff opposes Defendant Anderson's Motion for Judgment on the Pleadings [Docket No. 34] and accompanying Memorandum of Law [Docket No. 35] (collectively, "Motion") on the basis that the plaintiff has pleaded sufficient facts to sustain all of his claims against her.[1] In her Motion, Defendant Anderson misguidedly argues the merits of her case to the Court in a procedurally improper fashion. Essentially, recently retired Major Anderson is utilizing motion practice on the pleadings to direct the Court's attention to extrinsic evidence that she believes supports her defense. Not only is Defendant Anderson's interpretation of the evidence inappropriate for a Rule 12 motion,

---

[1] For the sake of judicial economy, the plaintiff incorporates into this Opposition his Opposition to Defendant McKeon's Motion to Dismiss [Docket No. 26], as the arguments advanced by Defendant Anderson essentially mirror those previously made by Defendant McKeon. Additionally, the plaintiff incorporates into this Opposition the arguments advanced by undersigned counsel in response to Defendant Anderson's Motion to Dismiss a companion case before the Court, *Rei v. McKeon, et al.*, 1:17-cv-12232-GAO at Docket No. 25, as the arguments for dismissal made by Defendant Anderson in that case are nearly identical to the arguments made in her present Motion.

she also blatantly mischaracterizes the evidence in her favor. The plaintiff has a wealth of evidence to support his claims, but has properly reserved argument on the evidence for the appropriate time. Accordingly, the Court should strike from Defendant Anderson's Motion any and all references made to facts outside of the pleadings.[2] If such facts are considered, the Motion must be converted to a Rule 56 Motion. Under the latter Rule, the plaintiff should be afforded sufficient time to conduct discovery and present evidence on his claims before the summary judgment standard is applied, so that the full record, and not the piece-meal and slanted presentation by Defendant Anderson, is considered. *See* Fed.R.Civ.P. 56(d).

Insofar as the Court considers Anderson's Motion under Rule 12, the plaintiff's facts as pleaded, and all reasonable inferences, must be accepted as true and construed in the light most favorable to the plaintiff. With regard to the plaintiff's federal constitutional claim, "each determination of whether state conduct 'shocks the conscience' is necessarily *fact-specific and unique to the particular circumstances in which the conduct occurred…*" *Cruz-Erazo v. Rivera Montanez*, 212 F.3d 617, 623 (1st Cir. 2000) (emphasis added). This inquiry merits discovery, particularly on the facts

---

[2] Defendant Anderson is notably selective in her presentation of the evidence. For example, she claims to have acted properly but entirely ignores that she, Defendant McKeon, and the two other top officials in the State Police all retired as a result of their involvement in this conspiracy, with Major Anderson retiring just last week with a general as opposed to an honorable discharge. Of course, Defendant Anderson would have the Court believe that the sudden retirement of all four of the top officials in the State Police who were involved was a coincidence, serendipity if you will, and that they all shared a sudden urge "to spend more time with family" while the Attorney General and State Ethics Commission investigate their criminal conduct.
  Defendant Anderson also maintains that, because she wrote the word "revised" on her notes, produced after the filing of this lawsuit, she must have told the plaintiff to mark the "fixed" report as revised. Of course, there are multiple eyewitnesses that are prepared to testify to the contrary.
  Finally, Defendant Anderson argues that the conduct of the District Attorney and judicial officials involved was proper, relying on her own spin on the facts. The evidence discovered to date strongly suggests otherwise but is not appropriate to present at this time.

alleged in the Complaint. Where state action "strikes at the basic fabric" of our criminal justice system, such conduct has ultimately been held to be conscience shocking. *Id*. at 623. In *Grendell v. Gillway,* 974 F.Supp. 46 (D.Me. 1997), the district court found that the behavior of the police "shocked the conscience" when an officer lied to and threatened an eleven-year-old girl in order to extract incriminating information about the suspected drug use of her parents. *Id*. The conduct at issue here is no less shocking.

The First Circuit has expressly held that a constitutional violation can occur in the context of verbal intimidation, particularly where the conduct strikes at the core of a fundamental tenet of American values. *Id*. at 52. *See also Souza v. Pina,* 53 F.3d 423 (1st Cir. 1995); *Pittsley v. Warish,* 927 F.2d 3 (1st Cir. 1991). Here, to say that the facts as alleged cannot rise to the level of shocking the "contemporary conscience" would be disingenuous, particularly where the public has already demonstrated its utter shock and disgust for the defendants' and their co-conspirators' criminal contrivance, resulting in the abrupt retirement of the entire top brass of the State Police. *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005), citing *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998) (An abuse of power sinks to a level cognizable under the Due Process Clause "when it is so extreme and egregious as to shock the *contemporary* conscience.") (emphasis added).

*Grendell* is just one example of a case where conduct akin to that alleged in the Complaint has been held to be conscience shocking. The conspiratorial, criminal, and coercive conduct of top law enforcement officials, undertaken to strip impartiality from the administration of justice, and subsequent discipline and public shaming of an innocent trooper to cover their tracks – as alleged here – is "entirely at odds with our

constitutional system" and similar conduct has been declared conscience shocking. *See U.S. v. Shepherd*, 857 F. Supp. 105, 109 (D.D.C. 1994) (holding that the discretionary conduct of law enforcement used to enhance a criminal defendant's sentence "to enormous degree strikes at the very heart of our system of justice" and "shocks the conscience of the Court."). *See also Grendell*, *supra*. Case law also acknowledges "that the Fourteenth Amendment offers protection against a severely defamatory charge, such as a claim of 'dishonesty or immorality' that might 'seriously damage' one's 'standing and associations in his community' or impose a 'stigma' that significantly interfered with his ability to 'take advantage of other employment opportunities.'" *Beitzell v. Jeffrey*, 643 F.2d 870, 877 (1st Cir. 1981). *See also Thomas v. Town of Salisbury*, 134 F.Supp. 3d 633, 649 (2015). Such is entirely apposite in this instance.

It is not lost on the plaintiff that the constitutional climb is a steep one, but a fact specific inquiry of a fully developed record is warranted and, frankly, deserved before the Court decides this issue. If the four top officials of the State Police entrusted with enforcing the law, in conjunction with the District Attorney, Director of Public Safety of the Commonwealth, and judiciary – all of which are sworn government officials tasked with administering and protecting the bedrock principle of our criminal justice system: equitable treatment in the eyes of the State – engage in a criminal conspiracy aimed to show unwarranted favor to the daughter of a judge because of her status by ordering an innocent trooper to commit a felony, disciplining him for following the law, and subsequently publicly shaming him in order to shield their conduct from the citizenry they serve, essentially destroying his young career, the contemporary conscience must (at the very least) be *potentially* shocked so that dismissal of this case on a Rule 12 Motion is

inappropriate and premature. If these facts have no ability to shock the contemporary conscience, the Fourteenth Amendment substantive due process clause has been rendered toothless, and our Constitution has lost any ability to protect citizens from wholly arbitrary and capricious conduct of the State that would make even the framers and erstwhile, honorable justices of the nation's highest court turn over in their graves.

For these reasons and those articulated by the plaintiff in Docket No. 26 and *Rei v. McKeon, et al.*, 1:17-cv-12232-GAO at Docket No. 25, Defendant Anderson's Motion should be denied in its entirety.

        Respectfully submitted,
        The Plaintiff,
        By her attorneys,

        */s/ Michael Stefanilo, Jr.*
        Leonard H. Kesten, BBO# 542042
        Michael Stefanilo, Jr., BBO# 684500
        BRODY, HARDOON, PERKINS & KESTEN, LLP
        699 Boylston Street, 12th Floor
        Boston, MA 02116
        (617) 880-7100
        lkesten@bhpklaw.com
        mstefanilo@bhpklaw.com

DATED: March 5, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent to those participants indicated as non-registered participants.

        */s/ Michael Stefanilo, Jr.*
        Michael Stefanilo, Jr., BBO# 684500

Dated: March 5, 2018